**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **YOLANDA (Mayweather) MITCHELL,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**MICHAEL J. ASTRUE,** )<br>**Commissioner of Social Security,** )<br>)<br>**Defendant.** )<br>_____ ) | **CIVIL ACTION**<br><br>**No. 11-2354-JWL** |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying supplemental security income (SSI) under sections 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Concluding that substantial evidence does not support the Commissioner's findings with regard to whether Plaintiff was seeing a psychiatrist or counselor, with regard to Dr. Franz's diagnosis of fibromyalgia, and with regard to Dr. Duncan's consultative examination report, and finding that these errors are prejudicial to Plaintiff, the court ORDERS that the decision is REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings.

**I.     Background**

Plaintiff applied for SSI benefits on August 7, 2007, alleging disability beginning January 1, 2007. (R. 22, 125-27).[1] The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 22, 71-72, 87-89). Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Jack D. McCarthy on December 8, 2009. (R. 22, 33). At the hearing, testimony was taken from Plaintiff, from a medical expert, and from a vocational expert. (R. 22, 33-70). On April 30, 2010, ALJ McCarthy issued a decision in which he found that Plaintiff has severe impairments, but that those impairments do not meet or equal the severity of an impairment listed in the Listing of Impairments. (R. 22-32). He determined that Plaintiff has the residual functional capacity (RFC) for a range of sedentary work but that she is unable to perform any past relevant work. (R. 26-30). Based upon the RFC assessed, and considering Plaintiff's age, education, and work experience, the ALJ determined that there a jobs in the national economy that Plaintiff is able to perform, represented by such jobs as a printed circuit board inspector, a semiconductor assembler, and an order clerk. (R. 31). He therefore determined Plaintiff is not disabled within the meaning of the Act, and denied her application.

Plaintiff sought Appeals Council review of the ALJ's decision, and provided a letter brief arguing error in that decision. (R. 15-17, 213-28). The Appeals Council

---

[1]The decision reveals that Plaintiff filed three previous applications for SSI benefits which were denied. (R. 22). Those applications are not at issue here.

issued an order making Plaintiff's letter brief a part of the administrative record, but nonetheless denied Plaintiff's request for review. (R. 6-9). It found no reason under Social Security Administration (SSA) rules to review the decision, and it denied Plaintiff's request. (R. 6). Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 6); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review. (Doc. 1).

## II.  Legal Standard

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)). Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party. It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither

reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  The Commissioner uses a five-step sequential process to evaluate disability.  20  C.F.R. § 416.920 (2010); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be

made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id. The Commissioner next evaluates steps four and five of the sequential process--determining whether claimant can perform her past relevant work; and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea, 466 F.3d at 907; accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy within Plaintiff's capability. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

      Plaintiff makes four arguments claiming error. First, she claims the decision is not supported by substantial record evidence because the ALJ made factual errors regarding the evidence and ignored evidence favorable to Ms. Mitchell's claim. Next, she claims

the ALJ erred in failing to find that peripheral neuropathy and right femoral neuropathy are severe impairments, and in failing to consider all of her impairments in combination. Plaintiff then claims the ALJ's RFC assessment is not supported by the record as a whole. Finally, she claims the ALJ erred in evaluating the credibility of Plaintiff's allegations of symptoms resulting from her impairments. The Commissioner addresses most of Plaintiff's arguments, but organizes his discussion differently. He argues that the ALJ properly assessed the severity of Plaintiff's impairments, properly evaluated the credibility of Plaintiff's allegations, and properly assessed Plaintiff's RFC. The court finds that, as Plaintiff argues, the ALJ made several factual errors in his assessment of the evidence, and those factual errors preclude finding that substantial evidence supports the Commissioner's decision. Therefore, remand is necessary for the Commissioner to properly evaluate the evidence. Because remand is necessary, and a proper evaluation of the evidence may lead to different findings regarding the severity of Plaintiff's impairments, the credibility of Plaintiff's allegations, and the assessment of RFC, the court will not attempt to address the proper resolution of those issues.

### III.     Factual Errors in Evaluating the Evidence

Plaintiff claims the ALJ misconstrued evidence from Dr. Franz's treatment notes concerning Plaintiff's fibromyalgia, made no reference to psychiatric services received from New Beginnings Health Care, and relied almost exclusively on the factually erroneous report of Dr. Duncan's consultative examination. (Pl. Br. 19-21). The Commissioner did not directly confront the factual errors alleged by Plaintiff; he

addressed them only obliquely. He acknowledged that Plaintiff has a history of fibromyalgia, but argued that her walking remained unimpaired, and that no rheumatologist had found that Plaintiff had the number of tender points required for a diagnosis of fibromyalgia. (Comm'r Br. 20). He argued that the ALJ based his mental RFC assessment on the record medical opinions assessing Plaintiff's mental abilities. Id. at 26. And he acknowledged, at least by citation, the ALJ's reliance upon Dr. Duncan's report in evaluating neuropathy, fibromyalgia, history of alcohol abuse, noncompliance with treatment recommendations, and ability to use arms, hands, and fingers. Id. at 17, 20, 21, 25 (citing, variously R. 554-57).

The ALJ summarized Plaintiff's history of fibromyalgia, and at the end of that discussion made the following analysis:

> Eight to nine tender points associated with fibromyalgia were indentified [sic] in an August 2007 examination (Exhibit BF/4). The undersigned notes that this diagnosis was apparently made by Mary Franz, D.O., the claimant's primary care or family physician, not a board certified rheumatologist. Thus, the criteria for establishing the impairment of fibromyalgia under the Social Security Act has not been met.

(R. 28). As a preliminary matter, the court notes that the citation provided in the quotation above is meaningless. In the normal course, ALJ's cite to an exhibit number with a "slash" followed by the page number of the exhibit cited, and the ALJ here appears to have followed that policy in the main. (R. 25, 26, 28, 29, 30). However, the medical exhibits in this case consist of 28 exhibits numbered from "B1F" through "B28F." "BF/4" does not identify an exhibit in this case. Moreover, exhibit "B4F" consists of

7

treatment records from Dr. Beard, a cardiologist, who was treating Plaintiff's heart ailments. (R. 470-85). Nonetheless, the court's research reveals a treatment note signed by Dr. Franz and dated "8-17-07" appearing in two of the medical exhibits, and to which the ALJ appears to be referring in the quotation above. (R. 380, 577). But, in neither of those exhibits does the treatment note at issue appear at page 4 of the exhibit.

The ALJ stated that Dr. Franz identified "eight <u>to</u> nine tender points associated with fibromyalgia," but, as Plaintiff points out the treatment note which is apparently at issue states "8 <u>of</u> 9 paired tender points ⊕ for fibro." (R. 28, 380, 577) (underlines added). Noting that one of the primary criteria for diagnosing fibromyalgia requires at least eleven positive tender points out of a possible eighteen, Plaintiff argues that Dr. Franz's treatment note amounts to an assertion that Plaintiff has sixteen positive tender points since Dr. Franz found 8 <u>paired</u> tender points positive for fibromyalgia. While Plaintiff's interpretation of Dr. Franz's note is certainly reasonable in a layman's view of the evidence, it is by no means controlling on the ALJ. Nevertheless, the ALJ's statement is not supported by the record evidence. "8 to 9" is not the same thing as "8 of 9," and merely ignoring the ambiguous term "paired" tender points does not remove the ambiguity in the treatment note.

> Clinical signs and symptoms supporting a diagnosis of fibromyalgia under the American College of Rheumatology Guidelines include "primarily widespread pain in all four quadrants of the body and at least 11 of the 18 specified tender points on the body." <u>Green-Younger v. Barnhart</u>, 335 F.3d 99, 107 (2d Cir. 2003); <u>see also</u> <u>Brosnahan[ v. Barnhart</u>], 336 F.3d [671,] 678 [(8th Cir. 2003)] (objective medical evidence of fibromyalgia includes consistent trigger-point findings).

Moore v. Barnhart, 114 F. App'x 983, 991 (10th Cir. 2004).

From the evidence presented here, the court is unable to ascertain whether the "tender points" referred to in Dr. Franz's treatment note are the same as the "tender points" or "trigger point findings" necessary to a diagnosis of fibromyalgia; whether the "9 paired tender points" referred to by Dr. Franz are equivalent to the "18 specified tender points on the body" included in the American College of Rheumatology Guidelines; or whether the "8 paired tender points" Dr. Franz found to be positive for fibromyalgia are equivalent to finding 16 positive tender points, or if they are sufficient to meet the Guidelines' requirement for at least 11 of the specified tender points.  It is the ALJ's duty to resolve these questions, and he may not do so merely by substituting "8 to 9" for "8 of 9," and by ignoring the term "paired" tender points in the treatment note.

The court also notes that although the ALJ stated, "Thus, the criteria for establishing the impairment of fibromyalgia under the Social Security Act has not been met," he did not cite to any authority for his statement, and he did not specify the criterion or the criteria which he found were not met.  While the opinion of a specialist will in many circumstances be accorded greater weight than the opinion of a family physician, the court is not aware of any requirement that a diagnosis of fibromyalgia be rejected unless made by a rheumatologist.  Moreover, the ALJ specifically found that Plaintiff has a "severe" impairment of fibromyalgia, suggesting that he found the criteria for such a diagnosis were met in this case.  (R. 24).  Further, the ALJ can only determine whether

9

the criterion requiring 11 out of 18 tender points is met after he resolves the ambiguities presented by Dr. Franz's treatment note.

Plaintiff also asserts that Dr. Duncan's report was factually erroneous, and that it was, therefore, error for the ALJ to rely upon that report. She claims Dr. Duncan erred in stating that Plaintiff does not have peripheral neuropathy; that Plaintiff has no history of chest pain, congestive heart failure, or shortness of breath, and has not been hospitalized for any cardiac related illness; that Plaintiff does not take insulin or oral medications for diabetes; and that Plaintiff has not seen a psychiatrist or counselor for depression. (Pl. Br. 19-20). Much about which Plaintiff complains <u>in Dr. Duncan's report</u> is not a basis to allege error <u>in the ALJ's decision</u>. Much of the allegedly erroneous reporting is in the section of Dr. Duncan's report captioned "Chief Complaints," and follows the physician's statement that, "She [Plaintiff] related the following medical history." (R. 554). In that section of his report, Dr. Duncan noted that Plaintiff reported "no history of cerebrovascular accident, chest pain, congestive heart failure, or shortness of breath;" that "[s]he takes no oral medication or insulin [for diabetes];" and that "[s]he does not currently see a psychiatrist or counselor." (R. 554).

To the extent that the ALJ accepted the reported statements as Plaintiff's report of her medical history to Dr. Duncan, Plaintiff has shown no error in the ALJ doing so. Dr. Duncan examined Plaintiff on February 9, 2008, and prepared his report with the same date. (R. 554-57) (Ex. B15F). Plaintiff appeared with counsel, and testified at the ALJ hearing on December 8, 2009. (R. 22, 33-34). Dr. Duncan's report appeared in the

record exhibits at the hearing, the ALJ asked if Plaintiff had any objection to the exhibits, and counsel for Plaintiff stated that there was "no objection" to receipt of the exhibits into the record. (R. 35). If Plaintiff argues that she did not report the history as stated by Dr. Duncan, that Dr. Duncan's assertions are erroneous, and that the ALJ should not have accepted the report as Dr. Duncan's understanding of the facts, Plaintiff waived those arguments when she accepted the exhibits without objection. As to the medical history, Dr. Duncan's report is his understanding of that history as reported to him by Plaintiff. Nonetheless, it is error for the ALJ to erroneously summarize Dr. Duncan's report, or to rely upon Dr. Duncan's erroneous understanding of the facts if the record evidence establishes otherwise. It appears the ALJ may have committed those errors here.

As Plaintiff argues, the ALJ stated, "Dr. Duncan saw no evidence of peripheral neuropathy." (R. 29). In the "Conclusions" to his report, Dr. Duncan stated, "On examination today, there was no peripheral neuropathy, retinopathy, or any end organ damage." (R. 557). On its face, the decision appears to correctly summarize the report. However, in his report, Dr. Duncan related Plaintiff's medical history and stated the following regarding diabetes: "There is no history of ketoacidosis, hypoglycemia, coma, retinopathy, peripheral vascular disease, or nephropathy. <u>She has neuropathy</u> to the feet, and is on Lyrica 100 mg BID." (R. 544) (emphasis added). In light of the history contained in Dr. Duncan's report, it is not clear what Dr. Duncan's "Conclusion" means. It is possible that the "Conclusion" represents a typographical error, and Dr. Duncan intended to state that there was no "nephropathy" but instead inserted "peripheral

11

neuropathy."  It is also possible that Dr. Duncan was making the distinction (assuming such a distinction is medically proper) that even though <u>Plaintiff reported</u> peripheral neuropathy in her feet and reported that she was taking Lyrica for that condition, his <u>examination</u> of Plaintiff revealed no peripheral neuropathy.  In either case, it was error for the ALJ to conclude that Dr. Duncan <u>saw no evidence</u> of peripheral neuropathy, because Dr. Duncan acknowledged Plaintiff's reported history of neuropathy in her feet and that she was taking Lyrica for that condition.  This is but one more ambiguity in the evidence which the ALJ failed to resolve.

    Plaintiff also objects to Dr. Duncan's handling of her cardiac ailments.   She argues that Dr. Duncan erred in stating that she has no history of chest pain, congestive heart failure, or shortness of breath, and in stating that she has not been hospitalized for any cardiac related illness.  (Pl. Br. 20).  As discussed above, Dr. Duncan stated that Plaintiff reported "no history of cerebrovascular accident, chest pain, congestive heart failure, or shortness of breath."  (R. 554).  Plaintiff did not object to the admission of Dr. Duncan's report, and she cannot now argue that she did not report this history to Dr. Duncan.  In his "Conclusions," however, Dr. Duncan also stated that Plaintiff "has not been hospitalized for any cardiac related illness" without stating the basis for this conclusion, and he stated that Plaintiff's "[c]ardiac exam is normal without cardiomegaly or congestive heart failure."  (R. 557).  In summarizing Dr. Duncan's report, the ALJ did not state all of Dr. Duncan's findings, but noted only his report that "cardiac exam was without cardiomegaly or congestive heart failure."  (R. 29).

While it is clear that Dr. Duncan was unaware of the history and extent of Plaintiff's cardiac condition, and while it would be helpful if an ALJ would discuss such obvious deficiencies when considering a physician's report, Plaintiff has shown no prejudice from these deficiencies.  The ALJ noted only Dr. Duncan's findings from his examination, and did not rely upon Dr. Duncan's other statements regarding Plaintiff's cardiac condition.  In the decision, the ALJ specifically noted that "[t]he claimant has an extensive history of premature CAD [(coronary artery disease)]," and he provided a substantial summary of that history.  (R. 28-29).  Plaintiff does not allege error in the ALJ's summary of her cardiac condition, and the court's review reveals that the ALJ provided a fair summary of the record evidence of Plaintiff's heart condition.

Finally, the court addresses Plaintiff's charge that the ALJ made no reference to psychiatric services received from New Beginnings Health Care.  The ALJ found that posttraumatic stress disorder (PTSD) is one of Plaintiff's "severe" impairments.  (R. 24).  He applied the Commissioner's psychiatric review technique, and determined that although Plaintiff's mental impairment is "severe," it does not meet or equal the severity of Listing 12.06 (Anxiety Related Disorders).  (R. 25-26).  In assessing RFC, the ALJ found that Plaintiff's mental impairments limited her to "simple instructions and low end detailed instructions (unskilled and semi-skilled instructions)."  (R. 26).  He noted that Plaintiff reported depression and PTSD.  Id. at 27.  His RFC analysis includes this discussion of Plaintiff's mental impairments:

13

>Additionally, the claimant reported a nine-year history of underlying depression. The claimant has a longstanding history of alcohol abuse (Exhibits B1F/15, B2F/17, B3F/5, B3F/25 [(R. 243, 378, 396, 416)]). In February 2007, she was noted to be abstinent from alcohol (Exhibit B4F/5 [(R. 474)]). The record reveals that she experienced stress after her daughter was shot. This incident and the claimant's depression and/or anxiety secondary to the same may be accounted for in the diagnosis of PTSD. The claimant has never been hospitalized for depression, but she was hospitalized in July 2007 for complaints of chest pain. Workup revealed this was of non-cardiac origin (Exhibit B19F/41 [(R. 601)]). At the time of the consultative evaluation in February 2008, the claimant related that her medications (Depakote, Lamictal, Seroquel, and Cymbalta) helped her depression. She was not seeing a psychiatrist or counselor (Exhibit B15F [(R. 553-57)]).

(R. 29).²

As Plaintiff charges, the ALJ made no mention of Plaintiff's treatment at New Beginnings Health Care. Medical records from New Beginnings appear as exhibits B5F, B8F, B21F, B23F, B25F, and B28F. (R. 486-507, 513-15, 604-09, 631-33, 652-54, and 686). The court's review of the decision reveals that the ALJ did not cite to any of the New Beginnings medical records. "[W]hile [the Commissioner] is not required to discuss every piece of evidence in the record, he must discuss the uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence he rejects." Threet v. Barnhart, 353 F.3d 1185, 1190 (10th Cir. 2003) (quotation omitted).

---

²The court notes that some of the medical exhibits cited in this portion of the decision do not appear to support the propositions asserted. The court finds that it is not necessary to resolve this discrepancy in order to decide the issue being discussed, but on remand it would be wise for the ALJ to recheck the citations.

As the quotation above reveals, the ALJ found that Plaintiff "was not seeing a psychiatrist or counselor." (R. 29). However, the New Beginnings medical records are significantly probative evidence to the contrary. Therefore, it was error for the ALJ not to discuss that evidence and explain why he determined Plaintiff was not seeing a psychiatrist or counselor.

As discussed above, the ALJ committed numerous factual errors in discussing and evaluating the record evidence. Those errors were prejudicial to Plaintiff, and this case must be remanded for a proper evaluation of the evidence. Plaintiff invites the court to reverse the Commissioner's decision and remand with directions to award disability benefits because "substantial evidence of the record establishes that Ms. Mitchell's impairments have been so severe, since August 7, 2007, as to preclude her from working." (Pl. Br. 34). While the court acknowledges that it has the discretion in appropriate circumstances to remand for an immediate award of benefits, Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993); Taylor v. Callahan, 969 F. Supp. 664, 673 (D. Kan. 1997) (citing Dixon v. Heckler, 811 F.2d 506, 511 (10th Cir. 1987)), Plaintiff makes no attempt to inform the court as to the relevant factors in making such a determination, and does not explain why the evidence leads to but one conclusion--that Plaintiff has been disabled since August 7, 2007. The court declines Plaintiff's invitation.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings.

Dated this 13th day of July 2012, at Kansas City, Kansas.


s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**